UNITED STATES of America, Plaintiff,

v.

Louis SERAFINI, et al., Defendants,

v.

LACKAWANNA REFUSE REMOVAL, INC., et al., Third–Party Defendants.

No. 3:CV–86–1591.

United States District Court, M.D. Pennsylvania.

June 5, 1992.

W. Benjamin Fisherow, Steven R. Baer, Lands and Natural Resources Div., Environmental Enforcement Section, Dept. of Justice, Washington, D.C., Bruce D. Brandler, Asst. U.S. Atty., Scranton, Pa., Lydia Isales, Asst. Regional Counsel Region III, U.S. E.P.A., Philadelphia, Pa., for plaintiff.

Brian J. Cali, Robert A. Cecchini, Dunmore, Pa., for defendants Louis Serafini, Alfred Bernabei, Ernest Buttafoco, and Michael J. Naples, Jr., Individually and Training as Empire Contracting Co.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

The United States instituted this action on November 10, 1986, seeking injunctive relief and recovery of response costs pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606(a) and 9607(a), in connection with the Taylor Borough hazardous waste site located south of Scranton, Pennsylvania. The remedial action at the Taylor site has been completed pursuant to a consent decree negotiated by the United States and several defendants. The United States is now seeking reimbursement of the outstanding costs it incurred in responding to the release of hazardous substances at the site from the remaining defendants, namely, the City of Scranton ("Scranton") and Louis Serafini, Alfred Bernabei, Ernest Buttafoco, and Michael J. Naples, Jr., individually and trading as Empire Contracting Company ("Empire defendants"). By a previous Order, these defendants were held to be jointly and severally liable to the United States for unreimbursed response costs. Scranton has filed complaints against numerous third-party defendants, seeking contribution and indemnification under CERCLA and common law theories.

Currently before the court is the United States' motion for summary judgment on response costs against Scranton and the Empire defendants.[1]

### RELEVANT FACTS

As stated above, the remedial action at the Taylor site has been completed pursuant to a consent decree. The costs associated with the remedial action are not in dispute.

1. Environmental Protection Agency ("EPA") Headquarters employees per-

---

1. Scranton has chosen not to file a formal opposition to this motion. Opposition briefs to the United States' motion filed by third-party defendants Topps Company, Inc. and Gentex Corporation have been rendered moot by the United States' decision not to join these parties as defendants in the primary action.

formed response activities at the Taylor site.[2]

2. The United States has incurred costs for the response activities performed at the Taylor site by EPA Headquarters employees, in the form of payroll expenses of those employees, in the amount of $8,950.10.

3. The United States has incurred costs of at least $757.16 for travel expenses of EPA Headquarters employees travelling to perform response activities at the Taylor site.

4. EPA Region III employees have performed response activities at the Taylor site.

5. The United States has incurred costs for the response activities performed by Region III employees at the Taylor site of at least $140,340.08 in payroll expenses for those employees.

6. Region III personnel have travelled to perform response activities at the Taylor site.

7. The United States has incurred costs of at least $6,124.12 in paying the travel expenses of Region III employees travelling to perform response activities at the Taylor site.

8. Roy F. Weston has conducted response activities at the Taylor site pursuant to Contract Nos. 68–01–6669 and 68–01–7367.

9. The United States has incurred costs of at least $37,409.86 in payments to Roy F. Weston for the response activities Roy F. Weston conducted at the Taylor site pursuant to Contract Nos. 68–01–6669 and 68–01–7367.

10. Viar and Company ("Viar") and contract laboratories participating in EPA's Contract Laboratory Program have performed response activities at the Taylor site.

11. The United States has incurred costs of at least $124,603.37 in payments to Viar for the response activities Viar conducted at the Taylor site.

12. NUS Corporation has conducted response activities at the Taylor site pursuant to Contract Nos. 68–01–6699 and 68–01–7346.

13. The United States has incurred costs of at least $618,361.23 in payments to NUS Corporation for the response activities conducted at the Taylor site pursuant to Contract Nos. 68–01–6699 and 68–01–7346.

14. Ecology & Environment has conducted response activities at the Taylor site pursuant to Contract Nos. 68–01–6056 and 68–01–5158.

15. The United States has incurred costs of at least $90,785.92 in payments to Ecology & Environment for the response activities Ecology & Environment conducted at the Taylor site pursuant to Contract Nos. 68–01–6056 and 68–015158.

16. CH2M Hill (Central), Inc. has conducted response activities at the Taylor site pursuant to Contract No. 68–W8–0090.

17. The United States has incurred costs of at least $30,590.61 in payments to CH2M Hill for the response activities CH2M Hill conducted at the Taylor site pursuant to Contract No. 68–W8–0090.

18. Under Interagency Agreements ("IAG's") with EPA, the Department of the Interior (IAG Nos. DW140382–01 and DW141875–01), has conducted response activities at the Taylor site.

19. The United States has incurred costs of at least $4,342.53 in payments to the Department of the Interior (IAG Nos. DW140382–01 and DW141875–01) for the response activities conducted at the Taylor site.

20. Under Interagency Agreements ("IAG's") with EPA, the Army Corps of Engineers (IAG Nos. DW96930310–01, DW96931150–01, DW96931151–01 and

2. Throughout this section of the memorandum, "at the Taylor site" shall be used as shorthand for "in response to conditions at the Taylor site." The court acknowledges that not all of the response activities conducted by the United States and its contractors described herein were actually conducted *on* the Taylor site (*e.g.*, analysis of samples taken from the sites were analyzed at off-site laboratories).

DW96931709–01), has conducted response activities at the Taylor site.

21. The United States has incurred costs of at least $140,868.22 in payments to the Army Corps of Engineers (IAG Nos. DW96930310–01, DW96931150–01, DW96931151–01 and DW96931709–01) for the response activities conducted at the Taylor site.

22. The National Enforcement and Investigation Center (NEIC), along with Fred C. Hart, have conducted response activities at the Taylor site pursuant to Contract Nos. 68–01–6546, 68–01–6640.

23. The United States has incurred costs of at least $53,603.47 in payments to NEIC, along with Fred C. Hart, for the response activities of NEIC along with Fred C. Hart conducted at the Taylor site pursuant to Contract Nos. 68–01–6546, 68–01–6640.

24. Camp, Dresser & McKee has conducted response activities at the Taylor site pursuant to Contract Nos. 68–01–7331 and 68–W9–0004.

25. The United States has incurred costs of at least $310,634.06 in payments to Camp, Dresser & McKee for the response activities Camp, Dresser & McKee conducted at the Taylor site pursuant to Contract Nos. 68–01–7331 and 68–W9–0004.

26. Alliance/GCA has conducted response activities at the Taylor site pursuant to Contract No. 68–01–6769.

27. The United States has incurred costs of at least $18,053.49 in payments to Alliance/GCA for the response activities Alliance/GCA conducted at the Taylor site pursuant to Contract No. 68–01–6769.

28. B.E.S. Environmental Specialists have conducted response activities at the Taylor site pursuant to Contract No. 68–93–0042.

29. The United States has incurred costs of at least $400,000 in payments to B.E.S. Environmental Specialists for the response activities B.E.S. Environmental Specialists conducted at the Taylor site pursuant to Contract No. 68–93–0042.

30. O.H. Materials has conducted response activities at the Taylor site pursuant to Contract No. 68–01–6893.

31. The United States has incurred costs of at least $6,194.07 in payments to O.H. Materials for the response activities O.H. Materials conducted at the Taylor site pursuant to Contract No. 68–01–6893.

32. Environmental Photographic Interpretation Center (EPIC) along with the Bionetics Corporation have conducted response activities at the Taylor site pursuant to Contract No. 68–03–3161.

33. The United States has incurred costs of at least $25,746.59 in payments to EPIC for the response activities EPIC conducted at the Taylor site pursuant to Contract No. 68–03–3161.

34. EPA has incurred indirect costs in responding to the contamination at the Taylor site. These indirect costs were incurred in conformity with the EPA indirect cost methodology.

35. The United States has incurred costs of at least $376,508.00 in direct costs in conducting the response activities performed by EPA Headquarters and Regional personnel at the Taylor site.

36. The United States Department of Justice ("DOJ") personnel have performed response activities at the Taylor site and have incurred a total of $120,308.99 in DOJ costs in connection with response actions at the Taylor site.

37. The United States has incurred costs of at least $37,171.59 in payroll expenses for the response activities conducted at the Taylor site by DOJ personnel.

38. The United States has incurred indirect costs of at least $78,433.63 in conducting the response activities performed by DOJ personnel at the Taylor site.

39. The United States has incurred costs of at least $4,703.77 in travel costs of DOJ personnel in conducting response activities at the Taylor site.

40. The United States has incurred total costs of at least $2,410,042.46 in EPA costs, prejudgment interest thereon of $713,448.67 through June 5, 1992, and $120,308.99 in DOJ costs in responding to the

releases and threatened releases of hazardous substances at the Taylor site.

41. Certain defendants have reimbursed the United States $910,039 pursuant to the July 20, 1987 Consent Decree in this matter.

42. The total unreimbursed response costs incurred by the United States is at least $2,333,761.12.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact to be resolved. Fed.R.Civ.P. 56. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. The entire record must be examined in a light most favorable to the non-moving party. *Continental Insurance v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982). If there is no genuine issue of material fact, summary judgment may be granted to the party entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Since a motion for summary judgment is designed to go beyond the pleadings, factual specificity is required of a party who opposes such a motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). Accordingly, in order to defeat a properly supported motion for summary judgment, a party may not rely on unsupported allegations. *Farmer v. Carlson*, 685 F.Supp. 1335, 1339 (M.D.Pa.1988). Nor can a party rely on self-serving conclusions, unsupported by specific facts in the record. *Celotex Corp. v. Catrett*, supra, 477 U.S. at 322–23, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273. A party must point to concrete evidence in the record which supports each essential element of his case. *Id.* If the party fails to provide such evidence, then he is not entitled to a trial and the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(e).

## DISCUSSION

Initially, the Empire defendants present arguments which are extraneous to this court's determination of the United States' motion. They argue that entry of summary judgment against them without the benefit of a hearing will deprive them of their property without due process of the law. In support of this argument, they cite *Reardon v. United States*, 947 F.2d 1509 (1st Cir.1991). *Reardon* is inapposite. In that case the First Circuit dealt exclusively with the process by which Superfund liens are established.

The Empire defendants also argue that they should be designated as *de minimis* potentially liable parties because their contribution to the toxicity of the site was minimal. Arguments as to the quality of their conduct should have been raised during the liability stage and the court will not address such arguments at this late date. In addition, the Empire defendants were free to implead third-parties or file contribution claims, as Scranton chose to do. In any event, there is simply no evidence that the harm at the Taylor site is divisible among the responsible parties. *See United States v. Monsanto Co.*, 858 F.2d 160, 171–73 (4th Cir.1988), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989) (to meet the burden of establishing a reasonable basis for apportioning liability among responsible parties, the defendants must establish that the harm at the site is divisible among responsible parties).

Under Section 107(a) of CERCLA, the United States is entitled to recover all costs it has incurred for response actions that are not inconsistent with the national contingency plan. 42 U.S.C. § 9607(a)(4). The response to and actions to minimize damages from hazardous substances releases shall, to the greatest extent possible, be in accordance with the national contingency plan. 42 U.S.C. § 9604(a)(1). The defendants bear the burden of demonstrating that the United States' response costs are inconsistent with the national contingency plan. *United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726, 747 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987).

The Empire defendants do not dispute the aforementioned facts concerning the costs incurred by the United States. Nevertheless, they question the manner in which the costs were incurred and the related amounts. However, they fail to submit any evidence whatsoever which creates a genuine issue of material fact as to the manner in which the costs were incurred and the related amounts. Since a party cannot rely on self-serving conclusions, unsupported by specific facts in the record, and the Empire defendants cannot point to any facts in the record in support of their contention, this argument fails.

Therefore, the only question before the court is whether the response costs incurred at the Taylor site are consistent with the national contingency plan and recoverable under CERCLA. A review of the statute and the case law indicates that they are. *See United States v. Ottati & Goss, Inc.,* 900 F.2d 429, 444–45 (1st Cir. 1990) (under CERCLA the United States may recover administrative costs calculated on an indirect basis); *United States v. R.W. Meyer, Inc.,* 889 F.2d 1497, 1505 (6th Cir.1989) (United States is entitled to recover prejudgment interest on all its costs); *United States v. Northeastern Pharmaceutical & Chemical Co.,* 579 F.Supp. 823, 850–852 (W.D.Mo.1984), *aff'd in part and rev'd in part on other grounds,* 810 F.2d 726 (8th Cir.1986), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987) (court found that under CERCLA plaintiff was entitled to recover all litigation costs, including attorney fees, and that the defendants were jointly and severally liable for all costs, including salaries and expenses, incurred by the plaintiff associated with such activities as monitoring, assessing and evaluating the release of contaminants and to take action to prevent, minimize or mitigate damages which might result from such a release); 42 U.S.C. § 9601(25) (defines "response" as remove, removal, remedy and remedial action, and states that all such terms include enforcement activities related thereto). *See also United States v. Monsanto Co.,* supra; *United States v. Bell Petroleum Services, Inc.,* 734 F.Supp. 771, 780–84 (W.D.Tex.1990); *United States*

*v. Hardage,* 733 F.Supp. 1424 (W.D.Okla.1989).

Accordingly, the United States motion will be granted.

## ORDER # 1

For the reasons stated in the accompanying memorandum, IT IS ORDERED THAT:

1. The United States motion (record document # 236, filed February 15, 1991) for summary judgment on response costs against defendants Louis Serafini, Alfred Bernabei, Ernest Buttafoco, and Michael J. Naples, Jr., individually and trading as Empire Contracting Company, and the City of Scranton, Pennsylvania is granted.

2. Defendants Louis Serafini, Alfred Bernabei, Ernest Buttafoco, and Michael J. Naples, Jr., individually and trading as Empire Contracting Company, and the City of Scranton, Pennsylvania, who have previously been held to be jointly and severally liable to the United States for response costs incurred at the Taylor Borough hazardous waste site, shall pay two million three hundred thirty-three thousand seven hundred sixty-one dollars and twelve cents ($2,333,761.12) to the United States for payment of unreimbursed response costs incurred at the Taylor Borough hazardous waste site.

3. The Clerk of Court is directed to enter final judgment in favor of United States of America, plaintiff and against Louis Serafini, Alfred Bernabei, Ernest Buttafoco, and Michael J. Naples, Jr., individually and trading as Empire Contracting Company, and the City of Scranton, Pennsylvania, defendants in the sum of two million three hundred thirty-three thousand seven hundred sixty-one dollars and twelve cents ($2,333,761.12).