AMERICAN ASSOCIATION OF STATE TROOPERS, INC., and Telcom Telemarketing Services of North Carolina, Inc., Plaintiffs,

v.

Ernest D. PREATE, Jr., as he is Attorney General of the Commonwealth of Pennsylvania, Defendant.

No. 1:CV–92–1401.

United States District Court, M.D. Pennsylvania.

June 17, 1993.

Theodore A. Adler, Harrisburg, PA, John P. Jennings, Jr., Copilevitz, Bryant, Gray & Jennings, Kansas City, MO, Thomas W. Scott, Killian & Gephart, Harrisburg, PA, for plaintiffs.

Janice L. Anderson, Mollie Ann McCurdy, Office of Atty. Gen., Harrisburg, PA, for defendant.

## MEMORANDUM

McCLURE, District Judge.

## BACKGROUND:

Plaintiffs instituted this action on October 5, 1992, with the filing of a complaint for declaratory relief, i.e., for a judgment by this court that the Pennsylvania Solicitation of Funds for Charitable Purposes Act, 10 Pa. Stat.Ann. §§ 162.1 et seq. ("the Charities Act"), deprives plaintiffs of their rights to free speech under the First Amendment and their right to equal protection under the Fourteenth Amendment. Plaintiffs contend that the Charities Act is unconstitutional both on its face and as applied to them.

Eight days after the filing of the complaint in this court, defendant filed suit against plaintiffs in the Commonwealth Court of Pennsylvania, alleging violations of both the Charities Act as well as the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.Stat.Ann. §§ 201–1 et seq. ("the Consumer Protection Law"). Plaintiffs have filed with this court a motion for a preliminary injunction, seeking to stay the proceedings in the Commonwealth Court pending disposition of the instant case.

Before the court are plaintiffs' motion for a preliminary injunction, and defendant's motion to dismiss or for summary judgment, and motion for sanctions.

## DISCUSSION:

As a preliminary matter, we would note that nowhere in the complaint or in any subsequent pleading or motion is there an allegation that the Consumer Protection Law is unconstitutional. Therefore, there is no reason to enjoin that portion of the proceedings in the Commonwealth Court instituted by defendant regarding allegations that plaintiffs have violated the Consumer Protection Law.

Also, defendant has argued that he is not the proper party to defend this action, since his liability would be based upon a theory of *respondeat superior* which is inapplicable to § 1983 actions. However, defendant is being sued in his official capacity for prospective relief, i.e., to prevent enforcement of an allegedly unconstitutional statute. A state official who has statutory responsibility for enforcement is a proper defendant in an action for prospective relief under § 1983. *Will v. Mich. Dept. of State Police,* 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 2311 n. 10, 105 L.Ed.2d 45 (1989) (citing *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). *See also Chaloux v. Killeen,* 886 F.2d 247, 252 (9th Cir.1989).

## I. STATEMENT OF FACTS

Following the filing of plaintiffs' complaint, defendant filed a motion to dismiss and/or for summary judgment, with an accompanying statement of undisputed material facts. In response, plaintiffs filed a counterstatement of material facts. The following represents a combination of those statements.

Defendant Ernest D. Preate, Jr., is Attorney General of the Commonwealth of Pennsylvania and is charged with enforcement of the Charities Act and the Consumer Protection Law.[1] Plaintiff American Association of State Troopers ("AAST") is a not-for-profit corporation incorporated under the laws of the State of Florida. AAST is registered with the Commonwealth of Pennsylvania, Department of State, Bureau of Charitable Organizations as a charitable organization pursuant to 10 Pa.Stat.Ann. § 162.5. Plaintiff Telcom Telemarketing Services of North Carolina, Inc. ("Telcom") is a for-profit corporation incorporated under the laws of the State of North Carolina. Telcom is registered with the Bureau of Charitable Organizations as a professional solicitor pursuant to 10 Pa.Stat.Ann. § 162.9.

---

1. *See* 10 Pa.Stat.Ann. § 162.16; 73 Pa.Stat.Ann. §§ 201–4, 201–6, 201–8.

On November 20, 1991, plaintiffs entered into a written agreement whereby Telcom agreed to conduct fundraising activities on behalf of AAST by soliciting contributions from Pennsylvania residents. Under the terms of the written agreement: (a) forty percent (40%) of gross revenues goes to the local telephone boiler room[2] manager; (b) the telephone boiler room manager pays the telemarketer's salaries from this money; (c) all other expenses, i.e., rent, utilities, printing, taxes, advertising, processing and accounting contributions are paid from the remaining sixty percent (60%); if there are any remaining proceeds, they are split equally between Telcom and AAST; and (d) Telcom guarantees AAST one percent (1%) of gross revenue.

Prior to the start of the telemarketing campaign, James P. Williams, Jr., President of Telcom, contacted the Pennsylvania Office of Attorney General (OAG) requesting information about the Charities Act. He was told that § 162.9(h)(1) requires the telemarketer to disclose the name of the professional solicitor as registered with the Bureau of Charitable Organizations and to disclose that the telemarketer is a paid professional. He was also informed that a common problem with solicitations for police organizations is that potential contributors are misled into believing that they are being called by a local police officer, and that the most effective way to overcome that problem was to disclose affirmatively and conspicuously at the beginning of each telephone solicitation the true identity of the caller.[3]

On March 3, 1992, a certified letter was sent by OAG to Buddy L. Tinney, President of AAST, confirming the discussion between OAG and Mr. Williams of Telcom and reiterating the oral and written disclosure requirements of the Charities Act. On March 16, 1992, Telcom filed a solicitation notice pursuant to § 162.9(e). Telcom hired individuals as telemarketers and opened two telephone boiler rooms, one in Springfield, Pennsylvania, and the other in Robinson Township, Pennsylvania.

On March 30, 1992, Senior Financial Investigator Steven C. Arter visited the telephone boiler room in Springfield and observed a second-floor room, the furnishings of which are in dispute but which are not particularly relevant to the disposition of this case. Arter spoke with a man identifying himself as the office manager of the Springfield boiler room and once again explained the provisions of the Charities Act regarding oral and written disclosures. Arter obtained a copy of the script used by Telcom's telemarketers and a copy of the written materials sent to contributors.

According to defendant, though disputed by plaintiffs, between March 26, 1992, and October 13, 1992, OAG received sixty-one (61) written and oral complaints or inquiries from residents of Pennsylvania who were concerned about telephone solicitation for contributions for AAST.[4] Each of the sixty-one consumer complainants was interviewed by OAG and reports were prepared on each interview.[5] Defendant has provided several examples of reports received by the Pennsylvania State Police and OAG regarding al-

---

**2.** Plaintiffs apparently object to the use by defendant of the term "telephone boiler room" to describe the office used by the telemarketers. The court, however, understands this term to refer simply to a center of operations, i.e., the single room in which a group of people perform most of the tasks involved in a larger endeavor, and finds it neither derogatory nor prejudicial.

**3.** Plaintiffs point out that the belief that this is a common problem may simply be the personal belief of Steven C. Arter, upon whose declaration defendant relies for this factual representation. However, the legislative intent in enacting the Charities Act included "protect[ing] the citizens of this Commonwealth by requiring full public disclosure of the identity of persons who solicit

contributions from the public, the purposes for which such contributions are solicited and the manner in which they are actually used, ..." 10 Pa.Stat.Ann. § 162.2 (Purdon 1992 Supp.).

**4.** Defendant's statement of undisputed material facts was filed on November 16, 1992. According to defendant, as of February 16, 1993, the number of complaints exceeded three hundred. Defendant's Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction and in Support of the Motion for Sanctions at 22.

**5.** We have omitted the break-down into categories of complaints provided by defendant, Defendant's Statement of Undisputed Material Facts at 5–6, ¶ 15.

leged telephone solicitations by Telcom telemarketers which, if proven, would constitute violations of the Charities Act and/or the Consumer Protection Law.

Telcom opened at least two additional telephone boiler rooms in Pennsylvania from which solicitations are being conducted, one in King of Prussia and the other in Dickson City.

At no time prior to initiating this lawsuit did either Telcom or AAST question representatives of OAG as to whether they were required to register or whether they were entitled to an exemption pursuant to 10 Pa. Stat.Ann. § 162.3. AAST voluntarily registered as a charitable organization.[6]

A statement consistently made on written solicitation materials throughout Telcom's Pennsylvania campaign and continuing to the present time is that AAST assists the Children's Wish Foundation. Statements consistently made in oral solicitations are that contributions will assist state troopers by increasing awareness of drunk driving and the need to use seat belts.

In July, 1992, a representative of OAG discussed in detail with counsel for Telcom the number and the nature of the consumer complaints received by OAG. Thereafter, counsel for Telcom and AAST repeatedly contacted OAG to schedule a meeting in order to discuss and to negotiate a settlement of the numerous complaints made against their clients.

On September 9, 1992, representatives of all parties met to negotiate a settlement of the matter. Defendant contends that, at that meeting, plaintiffs were presented with a suggested Assurance of Voluntary Compliance. Plaintiffs contend that the Assurance of Voluntary Compliance was received by a later FAX transmission. Apparently, plaintiffs objected to the Assurance of Voluntary Compliance on the ground that it called for disclosure prior to solicitation beyond that required by the statute, in violation of plaintiffs' First Amendment rights.

Despite counsel for Telcom's repeated representations that he wanted to negotiate a settlement on behalf of his client, Telcom and AAST initiated this lawsuit without ever making a counter-offer to the Assurance of Voluntary Compliance drafted by OAG.

Plaintiffs add, in concluding their counter-statement of material facts, that they are exempt by statute from the disclosure requirements of the Charities Act. This is a conclusion of law which will not be accepted by the court.

Finally, plaintiffs contend that all funds raised in their Pennsylvania campaign were used or will be used to benefit members of AAST or in accordance with the stated purposes of AAST.

## II. MOTION FOR PRELIMINARY INJUNCTION

### A. PRELIMINARY INJUNCTION STANDARD

Fed.R.Civ.P. 65 provides for the issuance of preliminary injunctions. In this Circuit,

At the trial level, the party seeking a preliminary injunction bears the burden of producing evidence sufficient to convince the court that (1) the movant has shown a reasonable probability of success on the merits; (2) the movant will be irreparably injured by denial of relief; (3) granting preliminary relief will not result in even greater harm to the other party; and (4) granting preliminary relief will be in the public interest....

*ECRI v. McGraw–Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987) (citation omitted).

■ Regarding the element of irreparable injury, the harm must be imminent and of such a nature that money damages alone cannot atone for it. *Id.*

### B. FIRST AMENDMENT ANALYSIS

The crux of plaintiffs' complaint is that the Charities Act, by compelling disclosure of certain information prior to solicitation of funds on behalf of a charity, unduly restricts

---

6. Plaintiffs contend that AAST registered as a charitable organization "out of an abundance of caution ...", and that there was no intent to waive statutory or constitutional rights in doing so. Plaintiffs' Counterstatement of Material Facts at 6–7.

**1232**

plaintiffs' right of free speech under the First Amendment. The right to free speech applies to state action through the Due Process Clause of the Fourteenth Amendment. *City of Cincinnati v. Discovery Network, Inc.,* — U.S. — n. 1, 113 S.Ct. 1505 n. 1, 123 L.Ed.2d 99 (1993) (citing *Stromberg v. California,* 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931); *Lovell v. Griffin,* 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938)).

■■ Charitable solicitation involves a variety of speech interests protected by the First Amendment; therefore, it is not purely "commercial speech," and is subject to traditional "strict scrutiny" under the First Amendment. *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,* 487 U.S. 781, 787–788, 108 S.Ct. 2667, 2672–2673, 101 L.Ed.2d 669 (1988). A restriction subject to strict scrutiny must be narrowly tailored to achieve a compelling state interest. *Int'l Soc. for Krishna Consciousness, Inc. v. Lee,* — U.S. —, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992).

■ While commercial speech is protected by the First Amendment, "[t]he government may ban forms of communication more likely to deceive the public than to inform it, ..." *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of N.Y.,* 447 U.S. 557, 563, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980) (citations omitted). In other words, false speech is not protected by the First Amendment. *See also Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 776, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984).

## C. LIKELIHOOD OF SUCCESS ON THE MERITS

■ The first prerequisite to a preliminary injunction to be established by plaintiffs is that they are reasonably likely to be successful on the merits. Plaintiffs argue that they will be likely to prevail on their arguments that the Charities Act is unconstitutional on its face and "as applied" to plaintiffs. We hold that they are not likely to be successful on the merits of the instant action.

### 1. Facial Unconstitutionality of the Charities Act

Defendant relies heavily upon footnote 11 of *Riley, supra.* In that case, the Supreme Court reviewed the constitutionality of the North Carolina Charitable Solicitations Act, which "define[d] the prima facie 'reasonable fee' that a professional fundraiser may charge as a percentage of the gross revenues solicited; require[d] professional fundraisers to disclose to potential donors the gross percentage of revenues retained in prior charitable solicitations; and require[d] professional fundraisers to obtain a license before engaging in solicitation." *Id.* 487 U.S. at 784, 108 S.Ct. at 2671. The Court held that this Act unduly infringed upon First Amendment freedoms because its fee-percentage formula and disclosure requirements were not narrowly tailored to the purposes of the statute. *Id.* at 790–794, 798–801, 108 S.Ct. at 2674–2676, 2678–2680.

In discussing the disclosure portion of the North Carolina statute, the Court stated that the State appeared to be giving too much weight to the need for disclosure of the exact percentage of the donation which would go to the charity, partly because the Act required professional fundraisers to disclose their professional status. *Id.* at 799, 108 S.Ct. at 2679. In footnote 11, the Court added,

The Act, as written, requires the fundraiser to disclose his or her employer's name and address. Arguably, this may not clearly convey to the donor that the solicitor is employed by a for-profit organization, for example, where the employer's name is "Charitable Fundraisers of America." However, nothing in this opinion should be taken to suggest that the State may not require a fundraiser to disclose unambiguously his or her professional status. On the contrary, such a narrowly tailored requirement would withstand First Amendment scrutiny.

*Id.* at 799 n. 11, 108 S.Ct. at 2679 n. 11.[7] This passage appears to foreclose plaintiffs'

---

7. This footnote is consistent with the Court's earlier suggestion in *Secretary of State of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 967 n. 16, 104 S.Ct. 2839, 2852 n. 16, 81 L.Ed.2d 786 (1984), that a state's interest in protecting its residents from unscrupulous professional solicitors may be accommodated directly through disclosure and registration requirements.

arguments that the Charities Act is constitutionally invalid.

Plaintiffs contend, however, that the Charities Act requires more disclosure than discussed in *Riley*, and that it is unduly restrictive of speech "as applied" to plaintiffs.

### 2. The Charities Act "As Applied" to Plaintiffs

The disclosure provision of the Charities Act provides as follows:

§ 162.9. **Registration of professional solicitors; contract and disclosure requirements; bonds; records; books**

. . . . .

(h) **Required disclosures.**—Prior to orally requesting or contemporaneously with a written request for a contribution, a professional solicitor shall be responsible for clearly and conspicuously disclosing:

(1) The name of the professional solicitor as on file with the department[8] and that the solicitation is being conducted by a professional solicitor who is being paid for his services.

(2) If the individual acting on behalf of the professional solicitor identifies himself by name, the individual's legal name.

(3) The name of the charitable organization and a description of how the contributions raised by the solicitation will be utilized for a charitable purpose or, if there is no charitable organization, a description as to how the contributions raised by the solicitation will be utilized for a charitable purpose.

. . . . .

10 Pa.Stat.Ann. § 162.9(h) (Purdon's 1992 Supp.).

Rather than being overly broad as contended by plaintiffs, this provision appears to be narrowly tailored to conform to the interest supported by footnote 11 in *Riley*. Concisely stated, § 162.9(h) calls for professional solicitors to state precisely who they are and what they want before asking for donations.

Included in the "who they are" portion of the disclosure, the individual solicitor must state his or her own legal name, the name of the professional solicitor as on file with the Commonwealth Department of State, and the name of the charitable organization he or she represents. The requirements of the individual's legal name and the name of the professional solicitor as on file with the state are nothing more than requirements that the individual be truthful. Anything less would not be protected speech. Disclosure of the professional status falls within the clear terms of footnote 11 of *Riley*,[9] and payment of the solicitor is consistent with his professional status.

Plaintiffs do not challenge the "what they want" portion of the disclosure provision, perhaps because its validity is so evident. A state's interest in preventing fraud is obviously served by having the potential donee inform the donor of the use to which the donation will be put. *See also* n. 6, *supra*.

Defendant points to two district court cases which are consistent with our holding. In *Tenn. Law Enforcement Youth Foundation, Inc. v. Millsaps*, No. 89–2762–G, 1991 WL 523878 (W.D.Tenn. filed September 3, 1991) (Exhibit E to Defendant's Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction and in Support of the Motion for Sanctions), a Tennessee disclosure provision[10] similar to § 162.9(h) was held to be constitutional, based in part upon the *Riley* footnote. The challenged provision required disclosure, prior to solicitation, of: (1) the name of the solicitor as on file with the State of Tennessee; (2) the name of the company or corporation for which the solicitor is an agent or employee; and (3) the solicitor's status as a professional who will receive a portion of the funds raised through the solicitation campaign. *Millsaps*, slip op. at 2.

8. The Department of State of the Commonwealth of Pennsylvania. 10 Pa.Stat.Ann. § 162.3 (Purdon's 1992 Supp.).

9. The Commonwealth's purpose in enacting the Charities Act is stated in the legislative intent section of the Act. 10 Pa.Stat.Ann. § 162.2 (Purdon's 1992 Supp.).

10. Tenn.Code Ann. § 48–3–513(j)(*l*):

In *Indiana Voluntary Firemen's Ass'n, Inc. v. Pearson,* 700 F.Supp. 421 (S.D.Ind. 1988), the court reviewed an Indiana disclosure provision [11] requiring disclosure of the charitable organization being represented, that the person soliciting is a professional fundraiser consultant or professional solicitor, and that a professional fundraiser consultant or professional solicitor is compensated. While striking down percentage based portions of the statute, the court upheld that part of the law which, like the Charities Act, was similar to a provision as described in footnote 11 of *Riley.* The court believed that it was bound to hold as it did, since, while footnote 11 may be dicta, it is dicta adopted by a majority of the Supreme court, and was considered carefully by the Supreme Court, to the extent that one Justice dissented solely from the footnote. *Id.* at 442.

We agree with defendant that these opinions, though not binding on this court, are consistent with our opinion and that the disclosure provisions of the statutes upheld in those cases are similar to § 162.9(h), in that the same type of information is required to be disclosed.

Plaintiffs also argue that the Charities Act violates their First Amendment rights "as applied." By the term "as applied," plaintiffs are apparently referring to defendant's contention that they are not exempt from the disclosure provisions and to defendant's proposed Assurance of Voluntary Compliance.

Plaintiffs are not exempt from the disclosure provisions of the Charities Act. They contend that AAST is not a "charitable organization" under § 162.3. As defined in that section, the term "charitable organization" is deemed not to include, *inter alia,* "any bona fide duly constituted organization of law enforcement personnel, firefighters or other persons who protect the public safety whose stated purpose in the solicitation does not include any benefit to any person outside the actual active membership of the organization; ..." Since a "professional solicitor" is a

person or organization retained by a "charitable organization," Telcom would not be a "professional solicitor" under the Charities Act if AAST were exempt.

Defendant points out that Telcom's written solicitation materials include statements to the effect that AAST assists the Children's Wish Foundation, an organization which benefits terminally ill children. Obviously, this would be a benefit to persons outside the "actual active membership" of AAST.

Defendant also argues that AAST's registration as a charitable organization demonstrates AAST's willingness to abide by the terms of the Charities Act. The form submitted to the Commonwealth by AAST is appended to Defendant's Statement of Undisputed Material Facts as Exhibit "A" and is captioned, "Registration Statement for Charitable Organization." In answering question 10 of the form, AAST indicated that it employed a professional solicitor. In answering question 24, AAST indicated that it was a "parent organization" under the Charities Act.[12]

In addition to AAST's registration as a charitable organization, Telcom registered as a professional solicitor. *See* Exhibit "B" to Defendant's Statement of Undisputed Material Facts. The bond accompanying Telcom's registration application states in part that Telcom agreed to abide by the laws of the Commonwealth and the rules and regulations of the Bureau of Charitable Organizations "as a Professional Solicitor" under the Charities Act.

Finally, a point not raised by defendant is that, in part, the solicitation campaign conducted by plaintiffs benefits Telcom, a person [13] outside the actual active membership of AAST. While the "Purpose" section of AAST's Registration Statement lists only purposes benefitting AAST's membership, the same form sets forth AAST's use of a professional solicitor, Telcom. It may be that the stated purpose of the solicitation

---

**11.** Ind.Code Ann. § 23-7-8-6.

**12.** "'**Parent Organization.**' That part of a charitable organization which coordinates, supervises or exercises control of policy, fundraising and

expenditures, or assists or receives funds from or advises one or more affiliates." § 162.3.

**13.** A "person" under the Charities Act includes corporations and organizations. § 162.3.

campaign may be construed so that it would not include the benefit to Telcom, but exclusion of that effect does not change the fact. We will not allow plaintiffs to profit, i.e., to be excluded from the disclosure provisions, by failing to include the benefit to Telcom in the solicitation campaign as a stated purpose of the campaign.

For all of these reasons, plaintiffs are not exempt from the disclosure provisions of the Charities Act. Under the Act, AAST is a charitable organization and Telcom is a professional solicitor.

Plaintiffs' argument that the Assurance of Voluntary Compliance violated their free speech rights is belied by the fact that their refusal of the offer was not the factor which precipitated the enforcement action by defendant; rather, it was plaintiffs' own filing of the instant suit during ongoing negotiations. Further, the Assurance of Voluntary Compliance was an offer to settle the dispute, and nothing in the record indicates that it was a "take-it-or-leave-it" offer. Defendant was in no way compelling speech by plaintiffs through the Assurance of Voluntary Compliance.

As the foregoing discussion indicates, plaintiffs are not likely to prevail on the merits of their claim, and a preliminary injunction is not appropriate in this case.

## D. IRREPARABLE INJURY

Plaintiffs also have not borne their burden of showing an imminent, irreparable injury. They argue that the mere existence of a constitutional deprivation constitutes irreparable injury. *See Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976). However, plaintiffs have not alleged that either the Charities Act or its enforcement has had any effect upon their solicitations. In fact, they do not even dispute defendant's contention that the campaign continues unabated and with considerable success. Also, as discussed above, we do not believe that there has been a chilling of plaintiffs' First Amendment Rights. There-

fore, plaintiffs have not demonstrated that they have suffered irreparable injury.

## E. EQUAL PROTECTION

Plaintiffs argue that the Charities Act violates the Equal Protection Clause of the Fourteenth Amendment. Since this claim has no merit, we will not deal with it at length.

Plaintiffs base their Equal Protection claim upon the following provision of the Charities Act:

"**Professional solicitor.**" ... A bona fide salaried officer or regular, nontemporary employee of a charitable organization shall not be deemed to be a professional solicitor provided that the individual is not employed or engaged as professional fundraising counsel or as a professional solicitor by any other person.

§ 162.3.[14] Plaintiffs argue that this provision favors larger organizations which have a number of employees and do not need outside help.

This contention is without merit for two reasons. First, the disclosure provision of 10 Pa.Stat.Ann. § 162.13(b) (Purdon's 1992 Supp.) applies to charitable organizations which do their own solicitation, so that persons exempted under the above provision from professional solicitor status must still make disclosure. Also, the only difference between § 162.9(h) and § 162.13(b) is, obviously, that of the professional status requirement of § 162.9(h). In fact, § 162.13(b) requires the further disclosure, if requested, of the name and address of a representative to whom inquiries may be addressed, and a source from which a financial statement may be obtained. § 162.13(b)(2), (4).

Second, the Charities Act contains a provision, termed a "small potatoes exemption" by defendant, for

[a]ny charitable organization which receives contributions of $25,000 or less annually, provided that such organization does not compensate any person who conducts solicitations. Charitable organiza-

**14.** The earlier version of this provision quoted by plaintiffs applied to charitable organizations "maintaining a permanent establishment within

this Commonwealth ..." This phrase has since been deleted. 1992 Pa.Legis.Serv. 92, § 1 (amending § 162.3).

tions which receive more than $25,000 in contributions shall file the appropriate registration statement within 30 days after the contributions are received."

10 Pa.Stat. § 162.6(a)(8).[15]

Plaintiffs, therefore, have no basis for a claim that they are being treated in a manner inconsistent with the Equal Protection Clause of the Fourteenth Amendment.

## III. MOTION TO DISMISS/FOR SUMMARY JUDGMENT

Defendant filed a motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment under Fed.R.Civ.P. 56(c). Under Rule 12(b),

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

As set forth at length above, facts outside those stated in the complaint have been considered by the court, and both sides have been given a reasonable opportunity to present all material pertinent to a motion for summary judgment. It is, therefore, more reasonable for the court to rule on defendant's motion as one for summary judgment under Rule 56 than as a motion to dismiss under Rule 12.

## A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" Fed.R.Civ.P. 56(c) (Emphasis supplied).

... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra* at 323 and 325, 106 S.Ct. at 2552 and 2554.

Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988); citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir.1988).

## B. FACIAL VALIDITY OF THE CHARITIES ACT

■ Plaintiffs' complaint seeks declaratory relief in the form of a judgment that the

---

**15.** This provision is part of the recent amendment to the Charities Act. *1992 Pa.Legis.Serv.* 92, § 3 (amending § 162.6(a)).

Charities Act is violative of the right to free speech under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. We have discussed plaintiffs' Equal Protection claims, *supra*, and find them to be without merit. We have also discussed above, at length, plaintiffs' contentions regarding the Charities Act "as applied," and that discussion will not be repeated.

To summarize the standard to be applied, set forth at length above, charitable solicitation is entitled to full First Amendment protection, so that a statute which limits charitable solicitation must be narrowly tailored to achieve a compelling state interest. *Riley, supra; Int'l Soc. for Krishna Consciousness, supra.*

The asserted interest of the Commonwealth of Pennsylvania in requiring the disclosures listed in the Charities Act is to protect its citizens from "deception and dishonest statements and conduct in the solicitation and reporting of contributions for or in the name of charitable purposes and by publicizing matters relating to fraud, deception and misrepresentation perpetrated in the name of charity...." [16] The Supreme Court has previously addressed the issue of whether protection of private citizens from deceptive practices on the part of charitable solicitors, or persons purporting to be charitable solicitors, is of such concern to a state that it may require disclosures and in doing so would not violate the solicitor's First Amendment rights.

In *Secretary of State of Maryland v. Joseph H. Munson Co., Inc., supra*, the Court reviewed a Maryland statute which prohibited a charity from paying more than 25 percent of the funds raised in a solicitation program toward expenses, with limited exceptions. In holding the statute unconstitutional because of the percentage-based prohibition, the Court noted, "[C]oncerns about unscrupulous professional fundraisers, like concerns about fraudulent charities, can [be] and are accommodated directly, through disclosure and registration requirements and penalties for fraudulent conduct." *Id.* 467 U.S. at 967 n. 16, 104 S.Ct. at 2852 n. 16.

Consistent with this language is footnote 11 of *Riley*, which is set forth in pertinent part above. Also in *Riley*, Justice Scalia, in his concurring opinion, specifically dissented from footnote 11, stating that "the natural order of things" in the practice of charitable solicitation is the use of professional solicitors, and that volunteer solicitors would be more likely to announce that status. *Id.* 487 U.S. at 803–804, 108 S.Ct. at 2681. In other words, when a solicitor does not announce his or her status, a reasonable person receiving the solicitation would be smart enough to assume the solicitor is a professional. *Id.* at 804, 108 S.Ct. at 2681. Otherwise, Justice Scalia concurred in the opinion of the majority, and concurred in the result of the decision. *Id.* at 803, 108 S.Ct. at 2681.

One court considering footnote 11 of *Riley*, after noting that *dicta* may have persuasive force, stated,

> ... In *Riley*, a majority of the Court clearly and unequivocally declared that a statutory disclosure provision which required professional solicitors merely to reveal the fact of their professional status was tailored narrowly enough under the first amendment to promote the state's interest in preventing fraud. Furthermore, this statement was obviously considered carefully enough by the Court that

---

**16.** 10 Pa.Stat.Ann. § 162.2. In full, that section reads,

> **§ 162.2. Legislative intent**
> It is the intention of the General Assembly that this act shall not merely require proper registration of charitable organizations, professional fundraisers and professional solicitors, but shall protect the citizens of this Commonwealth by requiring full public disclosure of the identity of persons who solicit contributions from the public, the purposes for which such contributions are solicited and the manner in which they are actually used, by promoting consumer education about charitable concerns, by providing civil and criminal penalties for deception and dishonest statements and conduct in the solicitation and reporting of contributions for or in the name of charitable purposes and by publicizing matters relating to fraud, deception and misrepresentation perpetrated in the name of charity. This act shall not be construed to be exclusive in its purview, and its application shall not operate as a bar or otherwise prevent the contemporaneous or subsequent application of any other relevant act or acts.

one Justice decided to dissent solely from footnote 11. This court finds, therefore, that it is bound by the Supreme Court's pronouncement in footnote 11 of the *Riley* opinion and that, by virtue of that holding, the Indiana Statute's section 6(a)(1) & (2)[17] is plainly constitutional. This analysis is not altered by the plaintiff's reference to Justice Scalia's lone concurrence in *Riley*. This trial court is bound to follow the clear mandate of the Supreme Court's majority, even if the logic of a concurring opinion might arguably be more persuasive in the abstract.

*Ind. Voluntary Firemen's Ass'n, Inc. v. Pearson, supra,* 700 F.Supp. at 442.

The three most recent pronouncements of the Supreme Court regarding regulation of charitable solicitations, *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980), *Joseph H. Munson Co., supra,* and *Riley, supra,* all stand for the proposition that percentage-based limitations on the fees charged by solicitors or paid by the charity for expenses are not narrowly tailored to achieve the state's interest in preventing deceptive practices. *Joseph H. Munson Co.* and *Riley,* however, are explicit in their indications that a required disclosure of the professional status of the solicitor is narrowly tailored to achieve the state interest.

The disclosures required under the Charities Act are not only similar, but nearly identical to those required under the statutes considered by the Indiana and Tennessee trial courts. We agree with the conclusion reached by those courts that the disclosure of the name of the solicitor, the charity for whom the solicitation is being made, and the professional status of the solicitor is consistent with Supreme Court precedent in that these disclosures are narrowly tailored to achieve a compelling state interest.

## IV.  MOTION FOR SANCTIONS

Having reviewed the explanations provided by plaintiffs regarding the alleged misconduct, the court finds that there has been no violation which would warrant the imposition of sanctions.

## V.  CONCLUSION

For the foregoing reasons, plaintiffs' motion for a preliminary injunction shall be denied, and defendant's motion to dismiss or for summary judgment shall be granted.

Plaintiffs have failed to meet their burden of proving that there is a reasonable likelihood that they will succeed on the merits. Also, they have failed to demonstrate irreparable injury. Therefore, the motion for a preliminary injunction to prevent enforcement of the Charities Act in the Commonwealth Court of Pennsylvania will be denied.

Supreme Court precedent establishes that disclosure requirements such as those set forth in the Charities Act are narrowly tailored to achieve a compelling state interest. At least two other courts have ruled that disclosure requirements similar to the Charities Act survive First Amendment scrutiny.

An appropriate Order shall issue.

## ORDER

For the reasons stated in the accompanying Memorandum, **IT IS ORDERED THAT:**

1.  The motion (record document no. 17) for preliminary injunction filed by plaintiffs American Association of State Troopers, Inc., and Telcom Telemarketing Services of North Carolina, Inc., is denied.

2.  The motion (record document no. 5) filed by defendant Ernest D. Preate, Jr., is treated, pursuant to Fed.R.Civ.P. 12(b), as a motion for summary judgment, under Fed. R.Civ.P. 56(c), rather than a motion to dismiss.

3.  Defendant's motion (record document no. 5) for summary judgment is granted.

4.  The clerk is directed to enter judgment in favor of defendant and against plaintiffs.

---

**17.** Ind.Code § 23–7–8–6(a)(1), (2).

5. Defendant's motion (record document no. 19) for sanctions is denied.

6. The clerk is directed to close the file.