**AMERICAN ASSOCIATION OF STATE TROOPERS, INC., and Telcom Telemarketing Services of North Carolina, Inc., Plaintiffs,**

**v.**

**Ernest D. PREATE, Jr., as he is Attorney General of the Commonwealth of Pennsylvania, Defendant.**

**No. 1:CV–92–1401.**

United States District Court, M.D. Pennsylvania.

Aug. 31, 1993.

Theodore A. Adler, Harrisburg, PA, John P. Jennings, Jr., Copilevitz, Bryant, Gray & Jennings, Kansas City, MO, Thomas W. Scott, Killian & Gephart, Harrisburg, PA, for plaintiffs.

Janice L. Anderson, Mollie Ann McCurdy, Office of the Atty. Gen., Harrisburg, PA, for defendant.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

Plaintiffs American Association of State Troopers, Inc. ["AAST"], and Telcom Telemarketing Services of North Carolina, Inc. ["Telcom"], instituted this action on October 5, 1992, with the filing of a complaint for declaratory relief, i.e., for a judgment by this court that the Pennsylvania Solicitation of Funds for Charitable Purposes Act, 10 Pa. Stat.Ann. §§ 162.1 et seq. ["the Charities Act"], deprives plaintiffs of their rights to free speech under the First Amendment and

their right to equal protection under the Fourteenth Amendment. Plaintiffs contend that the Charities Act is unconstitutional both on its face and as applied to them.

Eight days after the filing of the complaint in this court, defendant filed suit against plaintiffs in the Commonwealth Court of Pennsylvania, alleging violations of both the Charities Act as well as the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.Stat.Ann. §§ 201–1 et seq. Plaintiffs filed with this court a motion for a preliminary injunction, seeking to stay the proceedings in the Commonwealth Court pending disposition of the instant case.

Before the court is a motion by plaintiffs for reconsideration of the memorandum and order of June 17, 1993, [hereinafter cited as "Mem."] by which the court denied plaintiffs' motion for a preliminary injunction, granted defendant's motion for summary judgment, and denied defendant's motion for sanctions. 825 F.Supp. 1228. Plaintiffs claim that the court made errors of both law and fact in granting summary judgment for defendant.

## DISCUSSION:

### A. ALLEGED ERRORS OF MATERIAL FACT

In its motion, the first error of fact alleged by plaintiffs is a statement by the court in the June 17, 1993, memorandum as follows:

According to defendant, though disputed by plaintiffs, between March 26, 1992, and October 13, 1992, OAG received sixty-one (61) written and oral complaints or inquiries from residents of Pennsylvania who were concerned about telephone solicitation for contributions for AAST.

Mem. at 5. The court added in a footnote that, as of February 16, 1993, the number had risen to over 300 complaints, according to defendant. Mem. at 5 n. 4.

Plaintiffs now argue that the court had no basis for this factual "finding," so that an issue of fact existed, and the granting of summary judgment was inappropriate. This argument fails for three reasons.

First, this alleged "finding" is not a finding at all. The foregoing provision was part of the memorandum to show the context of the bringing of the action, not to resolve the dispute between the parties.

The foregoing leads to the second reason plaintiffs' argument is without merit: the fact that complaints were made, and the exact number of complaints, is not material to the outcome of this case. A fact is "material" if it will affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Whether complaints were made against plaintiffs, or their exact number, does not affect resolution of the issue of whether the Charities Act impermissibly infringes on plaintiff's free speech rights. Nor does the existence of complaints affect whether defendant had the right to apply the Charities Act to plaintiffs, since they could have acted in the manner in which they did absent any consumer complaints.

The third reason that the quoted factual "finding" is not error is that, had the court actually needed to make such a finding, the finding would be entirely justified. In denying this fact, plaintiff merely asserted that it was not true, and indicated that it did not have direct evidence that such complaints were ever made.

Since a motion for summary judgment is designed to go beyond the pleadings, factual specificity is required of a party who opposes such a motion. *Celotex Corp. v. Catrett*, [477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265] (1986). Accordingly, in order to defeat a properly supported motion for summary judgment, a party may not rely on unsupported allegations. *Farmer v. Carlson*, 685 F.Supp. 1335, 1339 (M.D.Pa.1988). Nor can a party rely on self-serving conclusions, unsupported by specific facts in the record. [*Celotex, supra*, 477 U.S. at 322–323, 106 S.Ct. at 2552]. A party must point to concrete evidence in the record which supports each essential element of his case. *Id.* If the party fails to provide such evidence, then he is not entitled to a trial and the moving party is entitled to summary judgment as a matter of law. Fed. R.Civ.P. 56(e).

*United States v. Serafini,* 795 F.Supp. 723, 727 (M.D.Pa.1992). Defendant provided affidavits which supported his factual assertion, including those of several consumers who actually made complaints. Plaintiffs have not provided any evidence which supports their denial. Were the fact material, the court would be justified in making such a finding.

Plaintiffs next take exception to the following passage from our memorandum of June 17, 1993:

> Further, the Assurance of Voluntary Compliance was an offer to settle the dispute, and nothing in the record indicates that it was a "take-it-or-leave-it" offer. Defendant was in no way compelling speech by plaintiffs through the Assurance of Voluntary Compliance.

Mem. at 16. According to plaintiffs, this passage contains three erroneous findings by the court: (1) that negotiations were ongoing; (2) that the refusal to agree to the Assurance of Voluntary Compliance did not result in defendant's enforcement action in the Superior Court; and (3) that the filing of the instant lawsuit caused defendant to institute the enforcement action.

Plaintiffs conceded that a meeting took place on September 9, 1992, between the parties, for the purpose of resolving the complaints against plaintiffs. Either at that meeting (according to defendant) or shortly thereafter (via facsimile transmission, according to plaintiffs), defendant provided to plaintiffs a copy of the Assurance of Voluntary Compliance. For plaintiffs to assert now that negotiations were not underway is absurd.

Moreover, these facts are not material. How the action was initiated does not affect its outcome. The Office of the Attorney General is entitled to accept an Assurance of Voluntary Compliance in any case in which there is a basis for an action under the Charities Act. 10 Pa.Stat.Ann. § 162.19(b) (Supp.1993). Since the Assurance of Voluntary Compliance was consistent with the terms of the Charities Act, and since the Charities Act requirements are no more than is constitutionally permissible, the terms of the Assurance of Voluntary Compliance do not violate plaintiffs' Free Speech rights. Whether the Assurance of Voluntary Compliance was mandatory or only an offer is not material, since it was permissible either way. And, no matter how the suit was started, the result is that the Charities Act provisions are constitutional.

Plaintiffs next object to our statement that "[a] statement consistently made on written solicitation materials throughout Telcom's Pennsylvania campaign and continuing to the present time is that AAST assists the Children's Wish Foundation." Again, plaintiffs argue that the court did not have a basis for this finding.

Plaintiffs' argument presumes that the follow-up notice sent to persons who agree, during the original telephone solicitation, to donate is not a part of the solicitation. As will be discussed further, *infra,* since a solicitation also involves an indirect request for a contribution, the notice is a part of the process of solicitation. The timing, therefore, of the statement regarding a benefit to the Children's Wish Foundation, is not material. The information is used only to show that persons other than AAST benefitted from Telcom's solicitation. Whether the information was provided during the original solicitation or later, in a mailing to a person who has agreed to donate, does not affect the outcome of this case.

The remaining factual assertions made by plaintiffs, *see* Brief in Support of Motion for Reconsideration at 7, are likewise not material to the disposition of the instant case. Further, plaintiffs have not provided evidentiary support of their denials of facts (a) and (b) set forth therein (the facts referred to above, concerning the reports received by both the OAG and the Pennsylvania State Police), as discussed above.

Fact (c) (that the parties met to negotiate a settlement) is conceded on page 4 of the Brief in Support, except what issues were being resolved is now disputed. That is, plaintiffs conceded that there was a meeting, but claim that it concerned the complaints made against them, and not the instant litigation. However, the instant litigation concerns the subject matter of the meeting;

resolution of the complaints against plaintiffs would have resolved the instant litigation for all practical purposes. Still, as set forth above, this distinction drawn by plaintiffs as to the actual subject matter is not material.

Finally, fact (d) (counsel for Telcom repeatedly represented that he wanted to negotiate a settlement on behalf of his client) is not material. Attempts at settlement do not affect the constitutionality of the Charities Act, either its facial validity or "as applied" to plaintiffs. The only manner in which this fact might be relevant is that defendant issued an Assurance of Voluntary Compliance, demonstrating that it believed that plaintiffs were not in compliance with the Charities Act. Regardless of why the Assurance of Voluntary Compliance was produced, defendant had the authority to use it, and did not need representations of a desire to settle the dispute to do so.

## B. ALLEGED ERROR THAT AAST IS A CHARITABLE ORGANIZATION

Plaintiffs next argue that the court erred in three ways when it held that AAST is a "charitable organization" as defined in the Charities Act. See 10 Pa.Stat.Ann. § 162.3 (Supp.1993). These are: (1) that the reference to a benefit to the Children's Wish Foundation was made at the time of solicitation is a material fact in dispute; (2) that AAST did not lose its statutory exemption because it employs a professional fund-raiser; and (3) that AAST did not lose its statutory exemption because it voluntarily registered as a charitable organization.

Plaintiffs' first argument confuses the statutory sections at issue. In its brief, plaintiffs argue at length from 10 Pa.Stat.Ann. § 162.-9(j) (Supp.1993). Brief in Support of Motion for Reconsideration at 9–10. The problem is that "charitable organization" is defined in § 162.3, not § 162.9. Specifically, the definition of "charitable organization" in § 162.3 provides that "... [t]he term shall not be deemed to include: (1) any bona fide duly constituted organization of law enforcement personnel ... whose stated purpose in the solicitation does not include any benefit to any person outside the actual active membership of the organization; ..." This provi-

sion does not state that the initial solicitation itself must include a reference to a benefit to persons outside of the organization in order to except an organization from the definition of "charitable organization" and, thereby, the provisions of the Charities Act. Therefore, the time that the disclosure is made is irrelevant. The fact remains that the stated purpose of the solicitation included a benefit to persons outside the actual active membership of AAST, and the evidence cited demonstrates that, among those persons, is the Children's Wish Foundation. Thus, AAST does not fit within exception (1) of the definition of "charitable organization" under § 162.3.

Further, plaintiffs' argument ignores the language of the definition of "solicitation" set forth in § 162.3, which includes in pertinent part, "[a]ny direct *or indirect* request for a contribution ..." Plaintiffs assert that the written "follow-up or confirmation" (Brief in Support of the Motion for Reconsideration at 10) which informs a potential donor of the benefit to the Children's Wish Foundation is sent after the potential donor has pledged to send money during a phone call. Obviously, the potential donor has not yet sent any money *to* plaintiffs *before* the mailing is made, and the mailing is part of the overall process of soliciting funds; that is, it is an "indirect request for contribution."

Plaintiffs next contend that the Pennsylvania legislature "clearly intended" to allow law enforcement organizations the benefit of the exception to the definition of "charitable organization," even when they employ a professional fund-raiser, so that the court's holding that the solicitation also benefitted Telcom would destroy the legislative intent of the Charities Act. Plaintiffs' basis for this contention is that, once a law enforcement organization employs a professional solicitor, the disclosure provisions of § 162.9(h) would be "triggered," despite the exemption of the organization.

Plaintiffs' argument that the court's interpretation destroys the legislative purpose underlying the Charities Act fails for two reasons. First, nowhere in the Act does it say that law enforcement organizations are excepted from the definition of "charitable or-

ganization" no matter who does their soliciting. Second, the interpretation is consistent with the stated purpose of the Charities Act to "protect the citizens of this Commonwealth by requiring full public disclosure of the identity of persons who solicit contributions from the public, the purposes for which such contributions are solicited and the manner in which they are actually used ..." 10 Pa.Stat.Ann. § 162.2 (Supp.1993).

Plaintiffs then make the argument that, even when an organization otherwise excepted from the definition of "charitable organization" does its own soliciting, other "persons" benefit, such as the telephone company, postal service, etc. The difference is that those persons benefit from the use of their services, not from the solicitation itself. For example, the telephone company benefits from the use of the telephone, not from the solicitation, and happens to benefit only if the solicitation is done by telephone. Telcom, on the other hand, benefits directly from the solicitation, no matter how it is conducted.

■ We agree with plaintiffs' assertion that the court's interpretation of § 162.3 would remove the exception of a law enforcement organization from the definition of "charitable organization" whenever one employs a professional solicitor. We disagree, however, that such an interpretation is contrary to the clear legislative intent behind the Charities Act. The provision quoted above indicates that the legislature intended the Charities Act to be a vehicle for ensuring that private individuals know with whom they are dealing when there is a solicitation for a charitable donation, as well as how the donated funds will be used. We see no inconsistency between the stated intent and requiring disclosure by a hired representative of a law enforcement organization.

Plaintiffs' argument seems to be that, since law enforcement organizations are excepted from the definition of "charitable organization," it is incongruous to require registration and disclosure when they hire a professional solicitor. However, once a professional solicitor is hired by a law enforcement organization, the public is no longer being solicited *by the organization itself*; rather, they are being solicited by a person acting on the orga-

nization's behalf, and a portion of the donation will be used to pay for the solicitation. A requirement that they be informed of such is completely consistent with the stated purpose of the Charities Act.

Plaintiffs also argue that the court's interpretation ignores the fact that a solicitor's speech is inextricably intertwined with the speech of the charity. However, the quoted portion of *Riley v. National Federation for the Blind of North Carolina, Inc.*, 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988), refers to the Supreme Court's holding that solicitation is protected speech. It does not say that a state may not require disclosure of the identity of the solicitor. That the charity may benefit from the relaying of its message in return for a portion of the fee collected by the solicitor does not change the fact that the solicitor benefits from relaying the message, that is, the solicitation.

Finally, plaintiffs argue that AAST did not lose its exemption from the definition of "charitable organization" by virtue of its registration as a charitable organization. This contention is addressed fully in the memorandum of June 17, 1993, and so will not be addressed at length here. We simply reiterate that both AAST and Telcom, in registering, agreed to be bound by the provisions of the Charities Act as a charitable organization and as a professional solicitor, respectively.

### C. ALLEGED ERROR IN EQUAL PROTECTION ANALYSIS

■ In their brief, plaintiffs state, "In rejecting Plaintiffs' equal protection claim, the Court relies, in part, on the 'small potatoes exemption' of 10 P.S.Stat. [sic] § 162.-6(a)(8). This was an error of law."

This was not an error of law. Plaintiffs' claim under the Equal Protection Clause was that excepting employees of charitable organizations from the definition of "professional solicitor" under § 162.3 was unfair to smaller charities which need to hire professional solicitors. We noted that, even when a charitable organization's own employees do the soliciting, the disclosure provisions of 10 Pa.Stat. Ann. § 162.13(b) apply. These provisions mirror the provisions of § 162.9(h) except, of

course, the requirement of disclosure of the professional status of the solicitor. Thus, when a charitable organization's own employees solicit, they must still make the requisite disclosures, and so solicitations by both large and small are subject to the disclosure provisions, and neither is favored by the exemption.

Regarding the "small potatoes exemption," it allows smaller charities an exemption from having to register as a charitable organization. Plaintiffs now argue that the exemption applies only if the smaller charities do not hire a professional solicitor. If the charity is small, so that, following plaintiffs' logic, solicitation by the charity itself would be a burden, the Charities Act relieves it of the further burden of registration. If the charity compensates someone for the solicitation, either its own employees or an outside solicitor, it is relieved of the burden created by solicitation, and registration is required.

Such an interpretation is consistent with both the language and the expressed purpose of the Charities Act. The purpose of the Charities Act is to protect the public by forcing solicitors to disclose their identities. Obviously, the small potatoes exemption relieves smaller charities of some paperwork, but not their disclosure responsibilities. Once the small charity employs outside help for its solicitation, the nature of the solicitation changes. It is then, when there is potential for confusion or deception, that the purpose of the Charities Act is furthered most: the smaller charity must register, so that the Commonwealth is aware of the professional solicitor's activities and so that the disclosure requirements for professional solicitors become applicable. A small charity is not thereby unduly burdened, since it must register only when it has the capability of conducting a solicitation through a professional solicitor, and all charitable organizations, regardless of size, are subject to the same disclosure requirements.

In short, plaintiffs' argument that the Charities Act is unfair to smaller charities because it unduly burdens them is untenable. If they are so small that solicitation by members is a burden, they are relieved of the burden of registration. If they are able to procure outside help with solicitation, they are required to register, since the burden of solicitation is removed. Either way, all charities must disclose their identity and purpose, and no charity is treated unfairly because of its size.

## CONCLUSION:

For the foregoing reasons, the motion for reconsideration shall be denied.